**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

**JEROME D. MOORE,**

        **Plaintiff,**

**v.**                                    **Civil Action No. 2:04cv391**

**SOUTHTRUST CORPORATION,**

        **Defendant.**

<u>**ORDER and OPINION**</u>

Pending before the court is the pro se plaintiff's motion for leave to file a response to the defendant's motion for summary judgment out of time. On April 20, 2005, the court held a hearing on this motion with both the pro se plaintiff and counsel for the defendant present. The court took the plaintiff's motion under advisement and directed the parties to produce certain documentation in support of their positions. Specifically, the plaintiff was given until May 11, 2005 to produce any records or documents that he referred to during the course of the hearing. On May 11, 2005, the plaintiff did submit a number of documents to the court. Accordingly, the plaintiff's motion is ripe for review. For the reasons stated fully herein, the court **DENIES** the plaintiff leave to file a response to the defendant's motion for summary judgment out of time.

I. Background

As background to this motion, the plaintiff has sued the defendant for alleged violations of the Electronic Funds Transfer Act ("the Act"), 15 U.S.C. § 1693 et seq., the regulations of the Federal Trade Commission promulgated pursuant to the Act, and for breach of contract. On January 11, 2005, the defendant filed a motion for summary judgment. The original deadline for

1

the plaintiff's response was February 3, 2005; however, the plaintiff failed to file a response on this date.  At a February 4, 2005 hearing before Judge Miller, the magistrate judge assigned to this matter, the plaintiff filed in open court a motion for an extension of time to respond to the motion for summary judgment.  In this first request for an extension, the plaintiff claimed that he had been unable to respond to the defendant's motion because he had trouble obtaining copies of certain needed deposition transcripts.

In an order entered on February 7, 2005, Judge Miller granted the plaintiff's motion for an extension of time and set a new response date of March 2, 2005.  This revised deadline passed without the plaintiff either filing a response to the motion for summary judgment or requesting an additional extension of time in which to respond.  On March 15, 2005, however, two weeks after the revised response date, the plaintiff filed the instant motion requesting a second extension of time.  The defendant, on March 21, 2005, filed an opposition memorandum to the instant motion.

Following the hearing on April 20, 2005, during which the court granted each of the parties time to submit certain documents, the defendant submitted the sworn affidavit of Jamie L. Callahan, a court reporter affiliated with Foshee & Turner, a court reporting agency located in Birmingham, Alabama.  On May 11, 2005, the plaintiff submitted various phone and bank records and other documents purportedly relating to his justifications for filing a response out of time.

## II. Discussion

In the instant motion, the plaintiff explains that his travel to Oklahoma for divorce proceedings made it impossible for him to timely file a response to the motion for summary judgment.  The plaintiff claims that, on February 26, 2005, he flew to Oklahoma to attend

divorce proceedings and to attempt to locate his wife.  He claims to have returned to Norfolk, Virginia on March 1, 2005.

Additionally, the plaintiff claims that he was without financial resources to file a response.  He states that he is a single father and that he has not held adequate employment throughout this case.  The plaintiff does admit, however, to owning his own company and to purchasing airline tickets to Oklahoma on February 10, 2005.  The plaintiff contends that, between February 28, 2005 and March 10, 2005, he was without funds to print and file his response to the defendant's motion for summary judgment.  The plaintiff claims that he received a refund of certain prepaid funds deposited for a deposition that did not take place on March 10, 2005, and that he used these funds to prepare and file the instant motion and the accompanying response to the motion for summary judgment.

At the hearing on April 20, 2005, the court questioned the plaintiff as to why he did not at least file a request for another extension on or prior to the extended response date of March 2, 2005.  The plaintiff protested that he was ignorant of the need to do so, despite acknowledging that he had read and was familiar with the Local Rules of this court.

The defendant's opposition memorandum to the instant motion claims that the plaintiff's inability to obtain certain transcripts, which was the given justification behind the first extension from February 3, 2005 to March 2, 2005, stemmed from the plaintiff's errors rather than those of the court reporting service.  In support of its opposition memorandum, the defendant attached an unsworn e-mail from the court reporter.  At the April 20, 2005 hearing, the court drew the defendant's attention to the fact that the statement from the court reporter was unsworn and granted the defendant leave until April 25, 2005 to provide a sworn version.  As noted above, the

3

defendant has complied with this directive.

At the outset, the court must distinguish between the reasons supporting the first extension of time to respond, from February 3, 2005 to March 2, 2005, and those supporting the instant motion to extend the time to respond to the motion for summary judgment beyond March 2, 2005.  The dispute with respect to the plaintiff's communications with Foshee & Turner and the proper party at fault for the difficulties the plaintiff appears to have experienced in obtaining the transcripts has no immediate bearing on the plaintiff's failure to meet the extended deadline of March 2, 2005; rather, the issue of the transcript difficulties was offered to support the initial extension of time from February 3, 2005 to March 2, 2005.  As the court will discuss, even if the plaintiff did encounter problems beyond his own making in securing the transcripts, such difficulties are not relevant to the reasons he offers in support of the instant motion for an extension of time.

The defendant's argument that the plaintiff's difficulties in obtaining the transcripts arose from his own errors is relevant, however, in assessing the plaintiff's credibility and determining whether the instant motion is made in good faith.  A determination by the court that the plaintiff's justification with respect to the first requested extension was inaccurate would certainly cause the court to view with some measure of skepticism the reasons offered in support of the instant motion.

A. First Extension - February 3, 2005 to March 2, 2005

The affidavit of Jamie L. Callahan, a court reporter affiliated with Foshee & Turner, does tend to undermine the plaintiff's claimed justification for why he was unable to file a response by the initial February 3, 2005 deadline.  The plaintiff claimed during the April 20, 2005 hearing,

4

and in his motion in support of the first extension, that Foshee & Turner had failed to provide

him with the transcripts, even though he had called the service repeatedly over the course of

several months and had been promised the transcripts on numerous occasions.  He further

claimed that on December 28, 2004, Foshee & Turner charged his credit card in excess of

$500.00 for such transcripts and promised him that the transcripts had been Fed-Exed to him.

Yet, as of February 4 ,2005, he had still not received them.  On February 7, 2005, based on this

information, Judge Miller granted the plaintiff's motion for an extension and gave the plaintiff

until March, 2, 2005 to file his response to defendant's motion for summary judgment.

The affidavit of Ms. Callahan explains that the reasons for the delay in providing the

transcripts to the plaintiff were that he changed his method of payment and provided an incorrect

address.  Ms. Callahan did initially advise the plaintiff in November 2004 that a rough draft of

the transcripts could be provided to him shortly after the depositions were conducted in mid-

November.  Within a few days of the deposition, however, Ms. Callahan learned that the

defendant had changed his method of payment from credit card to certified check.  Ms. Callahan

was advised by her supervisor not to begin the transcript until payment had been received, and

she advised the plaintiff accordingly.

The plaintiff claims that he made several efforts to contact Ms. Callahan but that she

failed to return his calls.  In his May 11, 2005 submission, he attaches copies of various phone

bills that he claims reveal calls to Foshee & Turner in an effort to contact Ms. Callahan.  While

these records do show telephone calls made to the same Birmingham, Alabama phone number on

November 12, 21, and 22 and December 6, 16, 20, and 27 of 2004, beyond the duration of the

calls and the number dialed, these records do not indicate with whom the plaintiff spoke or even

if the identified number belongs to Foshee & Turner.

The plaintiff has also attached a copy of an e-mail exchange between himself and Ms. Callahan on December 1, 2004. Although the information in this exchange is unsworn, it actually supports Ms. Callahan's version of events. The initial December 1, 2004 e-mail from Ms. Turner to the plaintiff explained that she was unable to provide a rough draft of the transcripts until payment was received in full. The plaintiff's same day reply indicated that he understood this policy.

Ms. Callahan avers that on or about December 30, 2004, she learned that the plaintiff had once again made arrangements to pay for the transcripts with his credit card. Although the plaintiff insisted at the April 20, 2005 hearing that he had paid for the transcripts with a credit card, he did not rebut or even acknowledge the contention of Ms. Callahan that he had changed his method of payment to a certified check and then back to a credit card.

The transcript was completed on January 14, 2005 and overnighted to the plaintiff at the address he provided during the deposition. Apparently, the plaintiff had provided the address for a residence for which had been previously evicted. Although someone at the residence signed for the transcripts, the plaintiff did not receive them.

Following the February 4, 2005 hearing before Judge Miller, during which the plaintiff claimed that he had yet to receive the transcripts, Foshee & Turner sent another copy to a new address provided by the plaintiff. At the April 20, 2005 hearing, the plaintiff claimed that he received these transcripts in early to mid-February 2005, but that they had the wrong court name listed on the cover page. On further questioning from the court, the plaintiff admitted, however, that the substance of each transcript was correct. Although the plaintiff claimed that he had to

6

wait yet again for the correct cover page to be provided by Foshee & Turner, the court sees no reason why the plaintiff could not have made use of the substance of the transcripts in preparing a response to the motion for summary judgment.

During the April 20, 2005 hearing, the plaintiff took issue with the statements made by the Ms. Callahan in her unsworn e-mail, claiming that Ms. Callahan lied in her account of the communications and transactions between the plaintiff and Foshee & Turner.  The plaintiff claimed at the hearing that he could obtain telephone records and other documents that would support his contention that he had frequent contact with the court reporter.  The court granted the plaintiff leave to file any such documents by May 11, 2005.  Other than the submitted telephone records and e-mails between the plaintiff and Ms. Callahan, none of the documents submitted relate to the plaintiff's difficulties in obtaining the deposition transcripts.  Moreover, these phone records and e-mails do not support the plaintiff's version of events.

The court has had the opportunity to assess the demeanor and credibility of the plaintiff during the April 20, 2005 hearing and also to consider the sworn affidavit of Ms. Callahan and the documents submitted by the plaintiff.  In doing so, the court finds that the plaintiff's version of events is simply not credible.  It is apparent even from the documents submitted by the plaintiff that he was aware as of at least December 1, 2004 that full payment was required before he could receive any portion of the deposition transcripts.  The plaintiff did not pay for the transcripts until late December 2004 and provided an incorrect address.  Although the plaintiff claims that he provided a correct address on November 29, 2004, he has provided no evidence of this in the form of phone or e-mail records that would support this claim.

The court concludes that any delay that resulted in the processing and receipt of the

7

transcripts must be attributed to the actions of the plaintiff.  The fact that the plaintiff, at the

February 4, 2005 hearing before Judge Miller and at the April 20, 2005 hearing before this court,

attempted to place the blame for his inability to timely file a response on the actions of the court

reporting firm and Ms. Callahan seriously serves to undermine his credibility before this court

with respect to all other representations made by the plaintiff in this matter.  The plaintiff, at the

April 20, 2005 hearing, clearly went on the record with the claim that Ms. Callahan lied in her

description of events.  The boldness of this assertion and the underlying dearth of evidence in

support of it only serves to further diminish the weight of the plaintiff's additional

representations to the court.

B. Second Extension - March 2, 2005 to March 15, 2005

With respect to the instant motion to extend the response date beyond March 2, 2005, the

defendant's opposition is rooted in the argument that the plaintiff has failed to produce any facts

tending to establish that his financial problems prevented him from preparing or filing his

response, or even communicating to the court or the defendant his difficulties in an effort to

obtain an extension prior to the March 2, 2005 response deadline.  The defendant also maintains

that the plaintiff has failed to meet various other deadlines in this case, a contention that the

plaintiff disputed at the April 20, 2005 hearing.

The plaintiff claimed at the April 20, 2005 hearing that he could submit documents in

support of his claim of lack of financial resources and necessary travel to Oklahoma.  To this

end, the plaintiff, on May 11, 2005, did include a number of documents, all unsworn and

unauthenticated, including: e-mails that purport to reveal the plaintiff's efforts to obtain

employment from December 2004 through February 2005; copies of illegible bank statements

containing selected entries during the period from December 2004 to January 2005; a copy of an

Oklahoma state court docket; a copy of a February 17, 2005 form indicating the Virginia State

Corporation Commission registration of the plaintiff's company; and a number of other

documents which appear to have no relevance to the instant motion.

The Local Rules of this court provide and require that "[a]ny requests for an extension of

time relating to motions must be in writing and, in general, will be looked upon with disfavor."

Loc. R. 7(I) E.D.V.A.  Additionally, the Federal Civil Rules of Civil Procedure provide that the

court, for cause shown, may extend the time for an act required to be performed by an order of

the court "upon motion made after the expiration of the specified period . . . where the failure to

act was the result of excusable neglect."  Fed. R. Civ. P. 6(b).  The standard for extending time is

less demanding, with no needed showing of excusable neglect, when a request is made prior to

the expiration of "the period originally prescribed or as extended by a previous order."

The Fourth Circuit has indicated that "excusable neglect" is not easily demonstrated.  <u>See</u>

<u>Thompson v. E.I. DuPont de Nemours & Co., Inc.</u>, 76 F.3d 530, 534 (4th Cir. 1996).  "[T]he

burden of demonstrating excusability lies with the party seeking the extension and a mere

concession of palpable oversight or administrative failure generally has been held to fall short of

the necessary showing[.]" <u>Id.</u> (quoting <u>In re O.P.M. Leasing Serv., Inc.</u>, 769 F.2d 911, 917 (2d

Cir. 1985)).

The United States Supreme Court has interpreted "excusable neglect" as used in the

bankruptcy rules, but with reference to the Federal Rules of Civil Procedure.  <u>See</u> <u>Pioneer Inv.</u>

<u>Serv. Co. v. Brunswick Assoc. Ltd. P'ship</u>, 508 U.S. 380, 391 (1980) (noting that bankruptcy

rule in question was patterned after Federal Rule of Civil Procedure 6(b)).  The Court defined

9

"'neglect' as encompassing 'late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'" Id. at 533 (quoting Pioneer, 507 U.S. at 389).   "Excusable" is defined as "at bottom an equitable [inquiry], taking account of all relevant circumstances surrounding the party's omission." Pioneer, 507 U.S. at 395. "[T]he Court specifically observed that 'inadvertence, ignorance of the rules, or mistakes construing the rules' do not usually constitute 'excusable' neglect." Thompson v. E.I. DuPont de Nemours & Co., Inc., 76 F.3d at 533 (citing Pioneer, 507 U.S. at 392).  With these standards in place, the court turns to the plaintiff's proffered excuses for his failure to comply with the revised response date of March 2, 2005.

1. Lack of Financial Resources

The plaintiff claims that between February 28, 2005 and March 10, 2005 he was without any funds "beyond income allocated for the support of his family ( rent and utilities)."  He contends that he had no funds to print and file his response to the defendant's motion for summary judgment.

The lack of financial resources is not an excuse for failing to at least request an additional extension of time.  See Martone v. Connecticut General Life Ins. Co., 1992 U.S. App. LEXIS 33557, at *7 (4th Cir. Dec. 23, 1992) (finding that plaintiff's claimed financial problems did not excuse his failure to either comply with scheduling order or request the court extend the deadline.)  Other than the alleged costs of printing the response, the plaintiff fails to identify how preparing and filing his response would have required any expenditure of funds.  As the plaintiff must be aware, he would have incurred no additional filing costs in submitting his response to the court.

10

Furthermore, the plaintiff elsewhere in his motion claims that he was able to purchase airline tickets on February 10, 2005 and February 26, 2005, and that he traveled to Tulsa, Oklahoma on February 26, 2005 and returned to Norfolk, Virginia on March 1, 2005.  The court finds it implausible that the plaintiff lacked the funds to file a response to the motion for summary judgment if he was able, during the period of time at issue, to travel to Oklahoma.  The court also notes that between February 7, 2005, when Judge Miller granted the plaintiff the first extension of time to respond, and March 2, 2005, when this extended response deadline expired, the plaintiff summoned the resources necessary to file three separate pleadings on February 15, 2005 and February 26, 2005.

The documents submitted by the plaintiff on May 11, 2005 do not support his claim for exhaustion of resources.  Bank statements from December 2004 through January 2005 have no relevance to the period in February and March 2005 during which the plaintiff claims that he was without the necessary funds.  The copy of the Oklahoma state court docket contains no entries for the period during which the plaintiff claims that he traveled to Oklahoma.  Additionally, the copy of the State Corporation Commission registration of the plaintiff's company on February 17, 2005 in no way supports the plaintiff's claim that all of his resources were involved in the day-to-day operations of his company.

This last contention is somewhat new.  The plaintiff has always maintained that his scarce resources were consumed in providing support for his family and rent obligations.  The May 11, 2005 submission is the first time that the plaintiff has suggested that his financial problems were also due to the needs of his new company.  Although the plaintiff has claimed that his company did not provide him with an adequate living, the fact that he suggests at the last minute that the

day-to-day operations of his company consumed his resources causes the court to doubt the

veracity of the overall claim concerning his lack of financial resources.

Finally, the e-mails regarding the plaintiff's efforts to obtain employment do not evidence

his lack of financial wherewithal to undertake the nominal cost of filing a response to the motion

for summary judgment.  By the plaintiff's own admission, he already had in his possession by

mid-February 2005 the substance of the needed depositions.  Certainly the fee for these

transcripts was the most costly item included in preparing the response to the motion for

summary judgment.  The court also observes that only two of the several e-mails are dated in the

February 2005 time period.  If anything, the use of e-mail during the period that the plaintiff

claims he was without funds or resources establishes that he had access to a computer on which

he could have prepared his response to the motion for summary judgment or a timely request for

an additional extension of time.

Even assuming, however, that the plaintiff truly lacked the nominal funds required to file

his response, the plaintiff has failed to adequately demonstrate why he did not request an

additional extension of time in which to respond.  Neither the court nor the defendant received

any communication from the defendant until March 15, 2005.  At the hearing on April 20, 2005,

the plaintiff claimed that he was ignorant of the need to request an extension of time by the

response deadline.  The record reveals, however, that the plaintiff has previously filed a number

of motions for extensions of time, including a motion for an extension of time to respond to the

defendant's motion for sanctions, filed on February 25, 2005.  The plaintiff also admitted during

the hearing that he had read the Local Rules of this court, which dictate the requirements for

motions for extensions of time.  See Loc. R. 7(I) E.D.V.A.

12

Moreover, from the court's review of the entire record in this matter, it is apparent that the plaintiff has relied on various rules of civil procedure in the course of discovery disputes or hearings before the court.  In a hearing on November 1, 2004 before Judge Robert G. Doumar, the plaintiff was advised that he would be held to professional standards in the course of this lawsuit.  The court cannot excuse the plaintiff's claimed ignorance of the requirement that any motion for an extension of time must be filed prior to or on the date the required action is to be performed, absent good cause and a showing of excusable neglect.  See Fed. R. Civ. P. 6(b).

2. Trip to Oklahoma

The plaintiff also asserts that he was unable to respond to the motion for summary judgment due to required travel to Oklahoma for divorce proceedings.  As noted above, the state court docket submitted by the plaintiff does not support this excuse as it reveals no court hearings or proceedings that took place in February or early March 2005.  Additionally, the plaintiff has failed to explain how any necessary divorce proceedings prevented him from taking steps to get his response filed between February 7, 2005, the date of Judge Miller's order that granted the initial extension, and February 26, the date he claims he left for Oklahoma.  The plaintiff admitted at the April 20, 2005 hearing that he had the substance of the needed deposition transcripts by early to mid-February.  Thus, he had ample time to complete his response even prior to his February 26, 2005 trip to Oklahoma.

Furthermore, even if the plaintiff was unable to respond within this time frame, the plaintiff claims that he returned to Norfolk on March 1, 2005, the day before his response was due.  Thus, if the plaintiff knew that he was not going to be able to meet the deadline because of problems with finances or transcripts, he should have requested an additional extension before he

left for Oklahoma or, at least, as soon as he returned.  Instead, he did nothing for two weeks after the deadline had passed and then filed his response along with the instant motion.

The court concludes that the plaintiff has failed to explain why his neglect to submit either a response or another request for an extension of time is excusable.  See Washington v. Mack Trucks, Inc., 2004 U.S. App. LEXIS 15946, at *2 (4th Cir. Aug. 2, 2004) (finding no abuse of discretion in district court's decision to deny pro se plaintiff's motion to admit late filed affidavits following two prior extensions).  The plaintiff admitted to the court during the April 20, 2005 hearing that he had read the Local Rules of this court.  The court cannot countenance such a complete disregard of these rules, absent a sufficient justification, which the plaintiff has failed to provide.  See Pioneer, 507 U.S. at 392 (noting that inadvertence or ignorance of the rules is not excusable neglect); Tatum v. Lanham, 1997 U.S. App. LEXIS 33470, at *1 (4th Cir. Nov. 25, 1997) (upholding granting of summary judgment against pro se plaintiff who failed to respond despite adequate Roseboro notice).  The plaintiff has already been provided with lenient treatment in the granting of one extension that, as described above, may not have been wholly justified.  The plaintiff's proffered excuses do not constitute the showing of excusable neglect necessary in order to warrant an additional extension. See Washington, 2004 U.S. App. LEXIS 15946, at *2 (finding no abuse of discretion in district court's decision to deny pro se plaintiff's motion to admit late filed affidavits following two prior extensions).

3. Missed Deadlines / Credibility

Finally, the defendant also claims that the plaintiff has missed various deadlines in this matter, such that the court should put a halt to this trend in the case of the instant motion.  The defendant also claims that the plaintiff has made various misrepresentations to the court

throughout this case.  Insofar as the plaintiff's request for an additional extension is based on his own representations to the court, which, as discussed above, are not supported by the record or his own submissions, the court must weigh the plaintiff's conduct and history of compliance throughout these proceedings in determining whether his request for an additional extension is made in good faith and for good cause shown.  See Fed. R. Civ. P. 6(b).

The plaintiff admitted at the April 20, 2005 hearing that he had missed a few deadlines, but not as many as claimed by counsel for the defendant.  The plaintiff also protested that he had already been sanctioned for missing these deadlines.  While the plaintiff has been subject to sanctions by Judge Miller in the past, the fact that sanctions may have been imposed does not require the court to overlook his history of noncompliance in assessing the instant motion.  See Martone, 1992 U.S. App. LEXIS 33557, at *7 (finding no abuse of discretion in dismissal of pro se plaintiff's case when plaintiff repeatedly failed to comply with court scheduling orders).

There is no dispute that the plaintiff has missed both the original and the revised deadline to respond to the defendant's motion for summary judgment.  Although pro se plaintiffs are held to less stringent standards than parties who are represented by counsel, such generous treatment has limits, and the plaintiff must abide by the required procedural rules.  See Haines v. Kerner, 404 U.S. 519, 520 (1972); Pardasani v. Martin Marietta Material Inc., 2004 U.S. Dist. Lexis 4464, at *7-8 (M.D.N.C. Jan. 8, 2004).  The plaintiff's continued failure to comply with court orders and procedural rules without sufficient cause constitutes an abuse of the court system.  See Ballard v. Carlson, 882 F.2d 93, 95-96 (4th Cir. 1989) (noting that sanction of dismissal appropriate where plaintiff continued to disregard court order despite warning that failure to comply could result in dismissal).

In making this determination, the court is cognizant of the fact that the plaintiff, although a non-lawyer, is no stranger to federal court.  Rather, the plaintiff is a prolific filer and has brought several cases in this court.  As such, he cannot be considered a novice and must be expected to comply with this court's local rules and the relevant requirements of federal civil procedure.

Additionally, the court's interaction with the plaintiff at the April 20, 2005 hearing and its review of the pleadings and documents submitted in connection with the instant motion causes the court to conclude that the plaintiff is not credible in his version of the dispute with Ms. Callahan, or in his other claimed excuses for failing to respond to the motion for summary judgment by March 2, 2005.  Time and time again at the hearing, the plaintiff was very specific in his assertions of the errors made by Ms. Callahan - even going so far as to pinpointing specific dates.  Yet when asked to respond to the defendant's allegations of missed deadlines or prior misrepresentations the plaintiff, after initially denying that such a deadline was missed or such a misrepresentation occurred, would claim confusion and lack of memory when the defendant pointed the court to a document that confirmed the missed deadline or misrepresentation.   The court will not allow an additional extension of time to be predicated on such behavior.

### III. Conclusion

Considering all of the above factors, the court cannot find that the plaintiff's failure to file his response or a request for an additional extension of time by the March 2, 2005 revised deadline was the result of excusable neglect such that another extension is warranted.  See Pioneer, 507 U.S. at 395 (noting that excusability inquiry takes into account all relevant circumstances).  When the defendant filed its motion for summary judgment on January 11,

2005, the plaintiff was provided with notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309, 310 (1975) and Local Rule 7(k) that the court could dismiss his action if he failed to file a response. The plaintiff was given additional time to respond, yet, he still missed the revised deadline of March 2, 2005. Furthermore, the plaintiff did not contact the court or counsel for the defendant and ask for an additional extension before the final March 2, 2005 deadline.  Instead, the plaintiff waited until two weeks after the deadline to file anything with the court.

The excuses offered by the plaintiff for his noncompliance with the March 2, 2005 deadline are not supported by the documents he submitted and fail to demonstrate excusable neglect.  Additionally, the plaintiff's justification for the first extension of time does not withstand scrutiny and undermines the veracity of his claims in support of the instant motion. The plaintiff's failure to receive deposition transcripts was due to his own failure to pay for such transcripts and to provide an accurate mailing address to the court reporting service.   Thus, not only was the plaintiff's alleged reason for not being able to respond within his control, but the plaintiff very well may have misrepresented his situation to the court in order obtain the original extension of time.

Finally, the court weighs the plaintiff's history of missing deadlines.  The plaintiff has failed to meet numerous other deadlines or meetings throughout the course of this case.  This behavior shows an obvious disregard for the seriousness of the proceedings of this court.  It is apparent to the court from reviewing the record in this matter that every effort has been made to respect the plaintiff's status as a pro se litigant and to afford him the lenient treatment such status normally warrants.  Such treatment, however, must come to an abrupt end when the latitude extended to the plaintiff is abused and the integrity of court proceedings tarnished.

Accordingly, the plaintiff's instant motion for leave to file a response to the motion for summary judgment out of time is **DENIED**.  The court will proceed to consider the defendant's motion for summary judgment without regard to the response the plaintiff attempted to file on March 15, 2005.  Following such review, the court shall issue an appropriate order.

The Clerk is **REQUESTED** to mail copies of this Order to the pro se plaintiff and to counsel for the defendant.

**IT IS SO ORDERED.**

_____/s/_____
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June 2nd, 2005