IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

**JEROME D. MOORE,**

      **Plaintiff,**

v.                                                                                                                              Civil Action No. 2:04cv391

**SOUTHTRUST CORPORATION,**

      **Defendant.**

## ORDER AND OPINION

This matter comes before the court on defendant's, SouthTrust Corporation ("SouthTrust"), "Motion for Attorney's Fees and Costs" filed on June 21, 2005, "Motion to Reconsider" filed on June 28, 2005, "Motion for Sanctions" pursuant to Rule 11 filed on July 22, 2005 and the plaintiff's "Motion for Extension of Time to File Response to Defendant's Motion for Attorney's Fees and Costs and For Leave to File Response After the Disposition of Plaintiff's Appeal" filed on July 1, 2005. In considering the submitted memoranda and exhibits, the court determines that a hearing is not necessary for the resolution of the issues presented at this time.  For the reasons stated fully herein, the court **ACCEPTS** the plaintiff's response to the defendant's motion for attorney's fees and costs, but **DENIES** the plaintiff's request to file a response after the disposition of his appeal and to have this court defer its ruling on the defendant's motion for attorney's fees, **GRANTS** the defendant $83,930.55 in attorney's fees and costs, **DENIES** the defendant's motion for sanctions, and **REFERS** to Judge Miller the defendant's motion for reconsideration of the denial of sanctions set forth in his June 21, 2005 order.

**I. Procedural and Factual Background**

On June 30, 2004, the plaintiff filed a complaint against the defendant based on the defendant's alleged violations of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. 1693 <u>et seq.</u>, and breach of contract. Although the plaintiff's original complaint alleged numerous other claims, the plaintiff filed an amended complaint on November 29, 2004 proceeding only on the above two claims. Specifically, the plaintiff made these claims based on the defendant's refusal to provisionally credit plaintiff's bank account after plaintiff reported allegedly unauthorized transactions on his Visa check card. However, on June 10, 2005, this court granted the defendant's motion for summary judgment, thereby denying the plaintiff's claims. The plaintiff has appealed this decision.

This case has a long and complex procedural history as summarized in this court's June 10, 2005 summary judgment order. However, currently before this court are defendant's "Motion for Attorney's Fees and Costs", "Motion to Reconsider", "Motion for Sanctions", and the plaintiff's "Motion for Extension of Time to File Response to Defendant's Motion for Attorney's Fees and Costs and For Leave to File Response After the Disposition of Plaintiff's Appeal." The following summary sets forth the procedural history of the above motions in the order which it occurred.

On June 21, 2005, after the court granted the defendant's motion for summary judgment, the court referred this case to Magistrate Judge Tommy Miller to allow him to rule on a pending motion for sanctions that the defendant had filed against the plaintiff on January 13, 2005. In the motion for sanctions referred to Judge Miller, which is not the same motion for sanctions which is currently before this court, the defendant claimed that the plaintiff, during his deposition on December 16, 2004, was misleading to the defendant about the address of the plaintiff's estranged wife. On

February 4, 2005, Judge Miller granted the defendant's motion for sanctions and set a briefing schedule in order to determine the amount of sanctions. However, on June 21, 2005, after reviewing the briefs, Judge Miller set aside his original February 4, 2005 order granting sanctions explaining that, "[b]ased on the pleadings now filed, . . . the defendant failed to meet its burden to show that sanctions should be imposed on the plaintiff." (June 21, 2005 Order at 2). On June 28, 2005, the defendant filed the instant "Motion to Reconsider" asking this court to reconsider Judge Miller's order denying the defendant's motion for sanctions.

On June 21, 2005, the defendant filed a "Motion for Attorney's Fees and Costs" asking this court to award the defendant attorney's fees and costs based on section 1693m(f) of the EFTA, which states that a court shall award attorney's fees and costs to the defendant if it finds that an unsuccessful action was brought in bad faith. On July 1, 2005, the plaintiff filed a "Motion for Extension of Time to File Response to Defendant's Motion for Attorney's Fees and Costs and For Leave to File Response After the Disposition of Plaintiff's Appeal". On July 6, 2005, the plaintiff filed his notice of appeal. On July 15, 2005, the defendant filed a memorandum in opposition to the plaintiff's motion for extension of time.

On July 22, 2005, the defendant filed its "Motion for Sanctions" pursuant to Rule 11 claiming that the plaintiff had filed this suit for an improper purpose. On July 26, 2005, the plaintiff filed an untimely "Memorandum in Opposition to Defendant's Motion for Attorney's Fees and Costs". However, on August 3, 2005, the defendant filed its reply to the plaintiff's Opposition to Attorney's Fees asking the court not to accept the plaintiff's response. Finally, on August 5, 2005, the plaintiff filed a timely "Memorandum in Opposition to Defendant's Motion for Sanctions."

On August 15, 2005, the court ordered the defendant to submit an itemized list of its costs.

On August 18, 2005, the defendant complied by submitting the affidavit of William Furr with attached exhibits. On September 1, 2005, the court requested the defendant to submit additional documentation to support its motion for attorney's fees and costs. On September 12 and 13, 2005, the court received such documentation. Although the court invited the plaintiff to respond to the additional documentation, the plaintiff failed to do so. The following discussion addresses all motions currently pending before this court.

## II. Discussion

**A.     Defendant's "Motion for Attorney's Fees and Costs" and Plaintiff's "Motion for Extension of Time to File Response to Defendant's Motion for Attorney's Fees and Costs and For Leave to File Response After the Disposition of Plaintiff's Appeal"**

On June 21, 2005, the defendant filed a "Motion for Attorney's Fees and Costs" asking the court to award the defendant $78,400.11 in attorney's fees and costs. However, since that date, the defendant has filed additional documentation and now claims a total of $83,930.55 in attorney's fees and costs. The defendant claims that because the plaintiff brought this lawsuit in bad faith, the court must award the defendant attorney's fees and costs pursuant to section 1693m(f) of the EFTA. As explained above, on July 1, 2005, the plaintiff filed a "Motion for Extension of Time to File Response to Defendant's Motion for Attorney's Fees and Costs and For Leave to File Response After the Disposition of Plaintiff's Appeal." In this motion, the plaintiff asks for an extension to file a response and claims that the court's order granting summary judgment was based on uncontested facts due to the denial of the plaintiff's motion to respond to defendant's motion for summary judgment. In addition, the plaintiff asks the court to defer its ruling on the defendant's motion for attorney's fees and costs until after the final disposition of the plaintiff's appeal. However, the defendant, in its memorandum in opposition, argues that the plaintiff has not met his burden to

justify such an extension, has provided no authority for his request, and is again attempting to delay the proceedings of this court.

On July 26, 2005, the plaintiff filed an untimely "Memorandum in Opposition to Defendant's Motion for Attorney's Fees and Costs." In his response, the plaintiff again attempts to argue the merits of his case. He also claims that the court should not award the defendant attorney's fees because the defendant's attorney, Mr. Furr, failed to expedite litigation by refusing to inform his client of the plaintiff's settlement offer of $3,000. However, the plaintiff offers no evidence to support his claim. The plaintiff also reasserts his argument that the court should wait until the Fourth Circuit has ruled on his appeal before ruling on the defendant's motion. As explained above, the defendant, at the request of the court, has submitted additional documentation to support its claim for attorney's fees and costs. However, the plaintiff has failed to respond or dispute such documentation.

1. Acceptance of Plaintiff's Response to Defendant's Motion for Attorney's Fees and Costs

First, the court must decide whether to accept the plaintiff's untimely response to the defendant's motion for attorney's fees and costs. Throughout this litigation, the plaintiff has repeatedly missed court imposed deadlines and delayed these proceeding with his never-ending litany of excuses. Because of this past behavior, the fact that the plaintiff's response is three weeks late, and the lack of a justifiable excuse, the court is inclined to reject the plaintiff's untimely response to the defendant's motion. However, given the large amount that the defendant is claiming, the court will err on the side of caution and accept the plaintiff's untimely response. Thus, because the court has accepted the plaintiff's response, the plaintiff's request to file a response after the disposition of his appeal is denied. Furthermore, this court will not wait until after the disposition

of the plaintiff's appeal to rule on the defendant's motion.

The Advisory Committee Notes of the 1993 Amendments to Rule 54 of the Federal Rules of Civil Procedure provide:

> Filing a motion for fees under this subdivision does not affect the finality or the appealability of a judgment . . . . If an appeal on the merits of the case is taken, the [district] court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved.

FED. R. CIV. PRO. 54, Advisory Committee Notes to 1993 Amendments.

In this case, the court has determined that it is in the best interest of both parties for it to rule on the defendant's motion for attorney's fees and costs. Thus, should either party decide to appeal the court's ruling, the court of appeals will be able to hear all matters relating to this case at the same time.

Accordingly, the court **DENIES** the plaintiff's motion as to his request for this court to defer its ruling on the defendant's motion for attorney's fees and costs, but **ACCEPTS** the plaintiff's untimely response to the defendant's motion.

2.   Attorney's Fees and Costs under 1693m(f)

Next, the court turns to the substantive issue of whether it should award attorney's fees and costs to the defendant. The defendant's motion is based on section 1693m(f) of the EFTA, which states: "On a finding by the court that an unsuccessful action under this section was brought in bad faith or for purposes of harassment, the court shall award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1693m(f) (2004). Unfortunately, there is a dearth of case law with regard to the EFTA, and especially this section of the statute. In fact, as

discussed below, the court was only able to find one case from the Northern District of Illinois that specifically addresses section 1693m(f). Thus, this court must look to the law in general regarding attorney's fees and costs.

Although the plaintiff is correct that the "American Rule", under which each litigant pays his own attorney's fees, generally prevails in federal litigation, there are exceptions to this rule. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 263-64 (1975). One exception to this general rule is when there is a statutory basis for the imposition of such fees, such as section1693m(f) of the EFTA. As to costs, Rule 54 of the Federal Rules of Civil Procedure provides that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." FED. R. CIV. PRO. 54(d). The Fourth Circuit has also recognized this "presumption that costs are to be awarded to the prevailing party." United States Bank Trust Nat'l Ass'n v. Venice Md LLC, 92 Fed. Appx. 948, 956 (4th Cir. 2004)(quoting Cherry v. Champion Int'l Corp., 186 F.3d 442, 446 (4th Cir. 1999)). Rule 54(d) "has been interpreted to permit reimbursement of only certain categories of costs," known as taxable costs. Wheeler v. Durham City Board of Education, 585 F.2d 618, 623 (4th Cir. 1978). These costs are enumerated in 28 U.S.C. § 1920.  If the district court denies an award of taxable costs, "it must 'articulate some good reason' for its denial", specifically that "there would be an element of injustice in a presumptive cost award." Id. (internal quotation marks omitted). The Fourth Circuit explains that "[a]mong the factors that justify denying an award of costs are 'misconduct by the prevailing party,' 'the losing party's inability to pay,' '[the] excessiveness [of the costs] in a particular case, the limited value of the prevailing party's victory, or the closeness and difficulty of the issues decided.'" Id.

However, the Fourth Circuit has held that "[w]here attorneys' fees are expressly authorized by statute, . . . [the limitations of] Rule 54(d) [are] no longer relevant." Id. Instead, the court of appeals explains that "statutory authorization of reasonable attorneys' fees [i]s intended to include litigation expenses" beyond those deemed as taxable costs. Id. This holding supports Congress' clear intent in section 1693m(f) to compensate the defendant for the expenses it incurs in defending itself when a plaintiff brings a case against it in bad faith.

Thus, in the instant case, in order to determine if the defendant is entitled to reasonable attorney's fees and costs, the court must first determine if the plaintiff brought this suit in bad faith. As stated above, section 1693m(f) provides that "[o]n a finding by the court that an unsuccessful action under this section was brought in bad faith or for purposes of harassment, the court shall award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1693m(f) (2004). Whether a person has acted in bad faith is to be determined "utilizing an objective reasonableness standard." IVS Hydro, Inc. v. Robinson, 93 Fed. Appx. 521, 528 (4th Cir. 2004). The court of appeals reviews a district court's ruling of bad faith under a clearly erroneous standard. Hyatt v. Shalala, 6 F.3d 250, 255 (4th Cir. 1993). In other words, after a review of the record, the court of appeals will affirm the district court's finding, unless it is "left with the definite and firm conviction that a mistake has been committed." Id. (citing Mallory v. Booth Refrigeration Supply Co., 882 F.2d 908, 909 (4th Cir. 1989)).

The only case that this court could find that specifically addresses the bad faith standard set forth in section 1693m(f) is Uchacz v. Gov. Employees Insur. Co., 2003 U.S. Dist. LEXIS 7467 (N.D.Ill.). In Uchacz, the district court awarded the defendant bank its attorney's fees and costs after it determined that the plaintiff had acted in bad faith in filing the lawsuit. Id. at 9. In Uchacz, the

plaintiff filed a claim with her bank alleging that unauthorized transfers had taken place on her account. Id. at 1-4. The bank provisionally credited her account, but informed the plaintiff that she needed to provide written documentation of her claim within ten days to prevent the bank from withdrawing the provisional credit. Id. When the plaintiff failed to provide such documentation, the bank warned her again that she needed to provide the documentation or the credit would be withdrawn. Id. After the plaintiff again failed to provide the required documentation, the bank withdrew the provisional credit. Id. The plaintiff filed a suit against her bank claiming that the bank had violated the requirements of the EFTA by withdrawing her credit, failing to investigate her claim, and failing to notify the plaintiff of the results of its investigation. Id. 6-9. The court granted summary judgment in favor of the bank because it was revealed that, in addition to not providing documentation to the bank to support her claim, she had also authorized the alleged unauthorized transactions. Id.

The defendant bank sought attorney's fees and costs under section 1693m(f) on the basis that the plaintiff brought the suit in bad faith by failing to disclose to her attorney "the substance of her conversation with the Bank or the receipt of the two correspondences" requesting that the plaintiff provide documentation of her claim. Id. at 8-9. The court determined that the plaintiff acted in bad faith and, thus, awarded the bank its attorney's fees and costs. Id. To support its holding, the court explained that the bank fully complied with the EFTA, while the plaintiff acted in bad faith by failing to assist the bank in investigating the alleged unauthorized transactions. Id. Furthermore, the court listed the following facts as additional evidence of bad faith:

> Plaintiff continued to litigate the allegations against the Bank after the Bank set forth its argument, including the two correspondences, in September 2002. This continued

9

> litigation included responding to the Motion to Dismiss without properly addressing the two correspondences, litigating a Motion to Obtain Discovery and to Extend the Time to Respond to the converted Motion for Summary Judgment, and then failing to respond to the Motion for Summary Judgment.

Id.

Like the plaintiff in Uchacz, the plaintiff in the instant case also acted in bad faith in bringing the lawsuit against SouthTrust. As evidenced by the plaintiff's admissions in his deposition, the plaintiff filed suit even though he knew that either he or his wife had conducted the alleged unauthorized transactions, failed to investigate the charges before filing his claim, claimed that his card had been stolen when he knew that it had not, wrote a letter to the bank on fake law firm stationery rescinding some of the charges, claimed that the bank had violated the EFTA when, in fact, his own actions were fraudulent, and continued to litigate his claims long after he knew that his claims had no merit. These facts, which are substantiated by the plaintiff's own deposition, support the court's finding that he acted in bad faith in bringing this lawsuit against the defendant. Therefore, pursuant to section 1693m(f) of the EFTA, the court finds that the defendant is entitled to "attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1693m(f) (2004).

3.   Amount of Attorney's Fees and Costs

The next issue that the court must determine is the specific amount of attorney's fees and costs to award. The defendant has submitted affidavits and detailed Statements of Account from Willcox & Savage that set forth the specific amounts that it has had to expend defending the plaintiff's suit. In total, the defendant asks for $83,930.55.[1] This figure represents $77,250.00 that

---

[1] Originally, the defendant asked for $71, 848.00 in attorney's fees and $6,552.11 in costs, for a total of $78, 400.11.  However, since its original motion, the defendant has expended an additional $5402.00 in attorney's fees and $128.44 in costs as reflected in the invoices

Willcox & Savage, P.C. charged the defendant for legal representation and $6,680.55 in reimbursable costs. (See Def. Memo. in Support of Motion for Attorney's Fees and Costs, Ex. 1 - Statement of Account; Aff. of William M. Furr, Ex. A, filed Sept. 12, 2005). The plaintiff, however, claims that these fees are excessive and could have been avoided had the defendant simply settled the case with him for $3,000.

The Fourth Circuit has held that a district court shall determine the reasonableness of attorney's fees by applying the factors set forth by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir.) cert. denied, 439 U.S. 934 (1978). However, the district court is "not even required to recite each of the twelve relevant factors in its fee decision." Environmental Tech. Council v. South Carolina, 2000 U.S. App. LEXIS 12137 (4th Cir. 2000) (citing Alexander v. Tyler, 1999 U.S. App. LEXIS 9180, (4th Cir. May 14, 1999)). The Johnson factors include:

(1) the time and labor expended;
(2) the novelty and difficulty of the questions raised;
(3) the skill required to properly perform the legal services rendered;
(4) the attorney's opportunity costs in pressing the instant litigation;
(5) the customary fee for like work;
(6) the attorney's expectations at the outset of the litigation;
(7) the time limitations imposed by the client or circumstances;
(8) the amount in controversy and the results obtained;
(9) the experience, reputation and ability of the attorney;
(10) the undesirability of the case within the legal community in which the suit arose;
(11) the nature and length of the professional relationship between attorney and client; and

---

attached as Exhibit A to the August 18, 2005 Affidavit of William M. Furr.

  (12) attorneys' fees awards in similar cases.

Barber, 577 F.2d at 226.

The district court should consider these factors when "determining the reasonable rate and the reasonable hours" for attorney's fees. Daly v. Hill, 790 F.2d 1071, 1078 (4th Cir. 1986). The court of appeals explains that "[a] fee based upon reasonable rates and hours is presumed to be fully compensatory without producing a windfall." Daly, 790 F.2d at 1078. In "exceptional circumstances," this presumptively fair lodestar figure may be adjusted to account for results obtained and the quality of representation. Id. The court of appeals shall "review the reasonableness of the district court's calculation of amount of attorney's fees under an abuse of discretion standard." Hyatt, 6 F.3d at 256 (citing Pierce v. Underwood, 487 U.S. 552, 571 (1988)); United Food & Commercial Workers v. Marval Poultry Co., 876 F.2d 346, 350-51 (4th Cir. 1989).

  In this case, the defendant bases its claim for attorney's fees on section 1693m(f) of the EFTA, which states that a court shall award the defendant reasonable attorney's fees and costs if a claim was brought in bad faith. The defendant requests attorney's fees and costs from the date the plaintiff filed this suit, June 30, 2004, to the present. However, when the plaintiff originally brought this suit, he only had two claims: a claim based on an alleged violation of the Equal Credit Opportunity Act ("ECOA") and a breach of contract claim. On November 29, 2004, the plaintiff filed an amended complaint and brought three other claims: the EFTA claim, on which the defendant now bases its motion for attorney's fees, a claim based on an alleged violation of the Fair Credit Reporting Act ("FCRA"), and a claim based on an alleged violation of the Fair Debt Collection and Reporting Act ("FDCRA"). Thus, before addressing the Johnson factors, the court must first determine what portion of the litigation was devoted to defending the EFTA claim.

Generally, when calculating attorney's fees, a court must consider separately successful and unsuccessful claims. Hensley v. Eckerhart, 461 U.S. 424, 432 (1983). However, when a case involves multiple claims based on a common core of facts, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Id. "Such a lawsuit cannot be viewed as a series of discrete claims." Id; see also Williams v. Kingston Shipping Co., 925 F.2d 721, 725-26 (4th Cir. 1991). In such a case, "the court should allow the recovery of the fees and costs incurred as a result of an attorney's attention to the litigation as a whole." Stupay v. Embassy of the Sultanate of Oman, 1999 U.S. LEXIS 16935 (4th Cir. 1999) at 10-11.

Although in this case, there is no distinction between successful and unsuccessful claims, there is a question of how much time the defendant's attorneys spent on the EFTA claims as opposed to the other claims in this case. In this case, the plaintiff's original complaint alleged two claims: (1) violation of the ECOA and (2) breach of contract. Although the plaintiff titled his second claim "breach of contract", he actually claimed that the defendant violated the EFTA, as evidenced by the language in his original Complaint. Thus, from the beginning of this litigation, the defendant had to defend itself against a claim under the EFTA. Although the plaintiff also claimed a violation of the ECOA, and, in his Amended Complaint, alleged violations of the FCRA and the FDCRA, all of his claims stemmed from a common core of facts - the defendant's failure to provisionally credit the plaintiff's account after the plaintiff reported the allegedly unauthorized transactions. Because the plaintiff's claims are all based on the same set of facts, the court finds that the claims are so intertwined as to make it impossible to divide the hours spent working on this case on a claim-by-claim basis. Furthermore, the fact that the plaintiff withdrew the FCRA and FDCRA claims on the

13

same day that he asserted them, supports a finding that most of the defendant's work in this case dealt specifically with the EFTA claim. (See Minute Entry of Court Proceedings on Nov. 23, 2004). Thus, in determining attorney's fees, the court finds that it will consider the amount of time the defendant's attorneys devoted to litigation as a whole.

Willcox & Savage, P.C. has represented the defendant in this case from July 23, 2004 until the present. (See Affidavit of William M. Furr, Ex. A at 2). According to the Statement of Account submitted by the defendant, Willcox & Savage assigned William M. Furr, a high level partner whose hourly rate ranged from $275 to $295, to perform a substantial amount of the work on this case. However, the person who did the most amount of work on the case was Andrew R. Fox, an associate with the firm whose hourly rate ranged from $135 to $145. The hourly rate for all other Willcox & Savage employees who worked on the case ranged from $105 to $175 during the relevant time period.

In determining whether these are reasonable rates, the court has considered the market rate in the Hampton Roads area, as substantiated by the affidavit of William Devine; the nature of the case; the labor required in defending the plaintiff's numerous filings with this court; the experience and reputation of the attorneys; and the skill required to properly perform the legal services. At first blush, it may seem that Mr. Furr's hourly rates are high given the fact that this was not a complex case and that the suit in general lacked merit. However, after considering the plaintiff's history of filing suits with this court, his misleading conduct in this case, and the fact that Mr. Furr had prior experience litigating against the plaintiff, the court understands why Mr. Furr would feel obligated to handle a large a portion of the case. Thus, the court finds that the rates charged by Willcox & Savage are reasonable.

14

The court also finds that the hours that the defendant's attorneys spent on this case are also reasonable. The defendant has submitted detailed Statements of Account that substantiate the amount of time its attorneys spent on this case and give ample support to the defendant's claim. The court has reviewed these records and finds that the amount of time spent on each task is reasonable in light of the Johnson factors. Although the issues presented in this case were not particularly complex, the case has been pending for over a year and has required the defendant's attorneys to devote a considerable amount of work to the issues presented. The defendant made numerous attempts to make the plaintiff aware of the fact that his claims had no merit and were, in some respects, fraudulent. Yet, the plaintiff continued to pursue litigation. The plaintiff now claims that at some point, he offered to settle the case for $3,000, and that the defendant could have avoided a large portion of the attorney's fees if the defendant had simply settled the case. However, the defendant was under no obligation to settle the plaintiff's fraudulent claims, and thus, encourage others to file such fraudulent claims in the future. Thus, after considering the Johnson factors, the court finds that the hours that the defendant's attorneys spent on the case are reasonable. Accordingly, the court **AWARDS** the defendant $77,250.00 in attorney's fees.

As to the defendant's costs, the court finds that the defendant is entitled to the full $6,680.55. The defendant has submitted a detailed statement of the costs, both taxable and reimbursable, that it incurred in defending this lawsuit. As set forth above, because the entitlement to costs in this case is set forth by statute, the traditional limitations of only awarding taxable costs no longer apply. The purpose of section 1693m(f), which provides for costs and reasonable attorney's fees when a suit is brought in bad faith, is to compensate the defendant for its litigation expenses, not just its taxable costs. In this case, the defendant asks for both taxable and reimbursable costs, which include

photocopy fees, process server fees, long distance telephone charges, legal research charges, airfare and lodging to attend depositions, transcription fees, and private investigator fees to locate plaintiff's wife. The court finds that these costs were all reasonably incurred in defending the plaintiff's claims. Accordingly, the court **AWARDS** the defendant $6,680.55 in costs.

### B.     Defendant's Motion for Sanctions Pursuant to Rule 11

The defendant has filed a Motion for Sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure asking the court to impose sanctions against the plaintiff for filing and pursuing this lawsuit for an improper purpose and without conducting a reasonable inquiry to determine if his claims were warranted by existing law. Furthermore, the defendant argues that sanctions are warranted because, even now, after the plaintiff has been made aware that his claims are unwarranted, he still continues to litigate his case. However, the plaintiff, in his response to the defendant's motion, contends that sanctions are inappropriate and continues to argue the merits of his case, even though this court no longer has jurisdiction over his claims.

Under Rule 11 of the Federal Rules of Civil Procedure, a court may impose sanctions upon an attorney, law firm, or party that files a pleading or motion that is:

> 1) . . . presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) . . .[not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) [lacking in] . . . evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

FED. R. CIV. P 11(b)(1-3) & (c).

Rule 11 applies to both represented and unrepresented parties. <u>Harmon v. O'Keefe</u>, 149 F.R.D. 114,

116 (E.D. Va. 1993). In addition, subsection (c)(1)(A) of Rule 11, also referred to as the "safe-harbor" provision, states that a motion for sanctions "shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . , the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." FED. R. CIV. P. 11(c)(1)(A).The primary purpose "of Rule 11 is to deter future litigation abuse." In re Kunstler, 914 F.2d 505, 522 (4th Cir. 1990). However "[a] district court can and should bear in mind that other purposes of the rule include compensating the victims of the Rule 11 violation, as well as punishing present litigation abuse, streamlining court dockets and facilitating court management." Id.

The Fourth Circuit has held that "[b]ecause the rule requires that the party submitting the challenged pleading be given an opportunity to withdraw the pleading, sanctions cannot be sought after summary judgment has been granted." Brickwood Contrs., Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 389 (4th Cir. 2004) (citing Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 152 (4th Cir. 2002) (explaining that "'the "safe harbor" provisions of Rule 11(c)(1)(A) preclude the serving and filing of any Rule 11 motion after conclusion of the case.'")).

In this case, this court granted the defendant's motion for summary judgment on June 10, 2005. On June 21, 2005, the defendant complied with the "safe harbor" provision of Rule 11 by sending a letter to the plaintiff putting him on notice that the defendant would file a motion for sanctions if he did not voluntarily dismiss his Complaint within twenty-one days. On July 22, 2005, the defendant filed the instant motion for sanctions.

Although the defendant complied with the "safe harbor" provision of Rule 11, it served the letter and filed its motion for sanctions after this court had already entered its summary judgment

order. Although the court does not deny that the plaintiff's conduct throughout this case has been egregious, a motion for sanctions filed at this point in the case does not meet the intended purpose of Rule 11 because the court has already ruled on the plaintiff's Complaint. Furthermore, even if the defendant had not failed to cross this procedural hurdle, the court would not be inclined to award monetary sanctions in this case because of the plaintiff's limited ability to pay[2] and the large award of attorney's fees granted to the defendant. Any money paid by the plaintiff would be better spent in compensating the defendant for its attorney's fees and costs in defending this case, rather than satisfying sanctions. Furthermore, the court feels that the large award of attorney's fees and costs granted to the defendant is enough of a deterrence to keep the plaintiff from filing lawsuits in bad faith in the future. Accordingly, the defendant's motion for sanctions is **DENIED**.

C.   **Defendant's Motion to Reconsider**

In its June 28, 2005 "Motion To Reconsider", the defendant asks this court to reconsider Magistrate Judge Tommy E. Miller's June 21, 2005 order which set aside Judge Miller's previous February 4, 2005 order granting the defendant's January 13, 2005 motion for sanctions. (See Document No. 38). In its original motion for sanctions, the defendant asked this court to impose sanctions against the plaintiff for misleading both the defendant and court regarding the location of his estranged wife. Because this court was not involved in the case at the time of the plaintiff's deposition, nor at the time of the subsequent hearings, the court is not familiar with all of the factors surrounding this issue. However, Judge Miller was directly involved in the case at that time and was

---

[2] In determining the appropriate sanction to impose, one of the factors that the district court should consider is the party's the ability to pay. In re Kunstler, 914 F.2d 505, 523 (4th Cir. 1990)(citing White v. General Motors Corp. 908 F.2d. 675 (10th Cir. 1990)); see also Harmon,149 F.R.D. at 117.

18

able to consider all relevant factors. Accordingly, this court **REFERS** the defendant's motion for reconsideration to Judge Miller for consideration.

### III. Conclusion

In conclusion, for the reasons stated fully herein, the court **ACCEPTS** the plaintiff's response to the defendant's motion for attorney's fees, but **DENIES** his request to file a response after the disposition of his appeal and to have this court defer its ruling on the defendant's motion for attorney's fees, **GRANTS** the defendant $83,930.55 in attorney's fees and costs, **DENIES** the defendant's motion for sanctions, and **REFERS** to Judge Miller the defendant's motion for reconsideration of the denial of sanctions set forth in his June 21, 2005 order. The defendant has also filed a "Bill of Costs" with the Clerk's office asking for $1,194.50 in taxable costs. However, because the $6,680.55 in costs awarded by this court includes the $1,194.50 amount, the defendant's "Bill of Costs" is **MOOT**.

The court **ADVISES** the plaintiff that he may appeal from this Order within thirty (30) days of the date of this Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510.

The Clerk is **REQUESTED** to mail copies of this order to counsel for the defendant and to the pro se plaintiff.

**IT IS SO ORDERED.**

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September 28th , 2005